UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION at COVINGTON

| | | |
|---|---|---|
| RICHARD MCBEE, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 2: 16-57-WOB |
| | ) | |
| v. | ) | |
| | ) | |
| CAMPBELL CO. DET. CENTER, et al., | ) | **MEMORANDUM OPINION** |
| | ) | **AND ORDER** |
| Defendants. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

Plaintiff Richard McBee is a pretrial detainee confined at the Campbell County Detention Center ("CCDC") in Newport, Kentucky. McBee was arrested in Newport, Kentucky on January 10, 2016, and was charged with First Degree Robbery in violation of Ky. Rev. Stat. 515.020. In March 2016, following confirmation that he had previously committed state and federal crimes, McBee was charged with being a First Degree Persistent Felony Offender in violation of Ky. Rev. Stat. 532.080(3). He is currently representing himself in that case (with standby counsel) and is scheduled for trial on these charges on July 18, 2017. *Commonwealth v. McBee*, No. 16-CR-158 (Campbell Cir. Ct. 2016).[1]

McBee has filed a *pro se* civil rights complaint in this Court asserting over a dozen claims that are loosely related to the ongoing criminal prosecution against him and to the conditions of his confinement at CCDC. [R. 1] After the Court granted his motion to proceed *in forma pauperis* [R. 11], McBee filed his First Amended Complaint [R. 14]. He has also recently filed a motion to

---

[1]   See  https://kcoj.kycourts.net/CourtNet/Search/CaseAtAGlance?county=019&court=1&division=CI&caseNumber=16-R00158&caseTypeCode=CR&client_id=0  (last visited on February 14, 2017).

-1-

appoint counsel, two motions for injunctive relief, and a motion to file a second amended complaint [R. 16, 17, 18, 19].

      1.    <u>Motion to Appoint Counsel</u>.

In his motion to appoint counsel, McBee indicates that he lacks the legal training and resources to prosecute his claims and that he cannot afford to hire an attorney.  [R. 16]  28 U.S.C. § 1915(e)(1) authorizes a federal court to appoint counsel to represent a *pro se* party in civil litigation, but only in truly exceptional circumstances.  *Lanier v. Bryant*, 332 F.3d 999, 1006 (6th Cir. 2003).  When considering whether to grant such a request, the court considers the complexity of the case, the movant's likelihood of success on the merits of the claim, and the ability of the plaintiff to represent himself competently.  *Cleary v. Mukaskey*, 307 F. App'x 963, 965 (6th Cir. 2009).  In this case, the claims asserted by McBee are not unduly complex, the substance of McBee's claims are of doubtful viability, and McBee has adequately presented the claims in his complaint.  The Court has considered the *Lanier* factors and concludes that this case does not present the kind of extraordinary circumstances which would warrant the appointment of counsel for the plaintiff, and the Court will deny the motion.

      2.    <u>Motion to Amend the Complaint</u>.

Because McBee has been granted permission to proceed *in forma pauperis* and because he asserts claims against government officials, the Court must conduct a preliminary review of his complaint. 28 U.S.C. §§ 1915(e)(2), 1915A.  However, before engaging in a substantive screening of the complaint, the Court must determine what claims are to be screened.  First, McBee was entitled to amend his complaint once as a matter of course, Federal Rule of Civil Procedure 15(a)(1), and the Court therefore reviews his First Amended Complaint [R. 14].  On December 4, 2016, McBee filed a motion requesting two weeks to file a second amended complaint [R. 19].

However, that time period has long since come and gone, and McBee has taken no further action to amend his complaint. The motion will therefore be denied as moot, and the First Amended Complaint [R. 14] will remain the operative pleading in this action.

       3.     <u>Severance of Unrelated Claims</u>.

A preliminary review of the disparate claims asserted by McBee establishes that they do not belong together in a single complaint. McBee's First Amended Complaint names ten defendants: Campbell County Circuit Court Judge Julie Reinhardt-Ward, Commonwealth's Attorney Michelle Snodgrass-Deimlin, Directing Attorney of the Kentucky Department of Public Advocacy Eva Hager, CCDC Jailer James Daley, CCDC Lt. Col. Marc Brandt, CCDC Major Nagel, CCDC Lt. Warfield, CCDC Lt. Fletcher, CCDC Sgt. Lohr, and Southern Health Partners, Inc. McBee's complaint sets forth thirteen numbered claims, although these "claims" consist of a variety of factual allegations, each of which McBee contends violate numerous constitutional rights. McBee's complaint alleges that various defendants have (1) confiscated his legal materials on three occasions, (2) provided an inadequate law library, (3) provided him with only limited access to Westlaw, (4) do not provide him with Kosher meals, (5) charge more than face value for postage stamps, (6) failed to provide him with adequate medical care for his injuries shortly after his arrest, (7) used excessive force after his arrest, (8, 11) failed to provide him with hormone therapy and prescribed medications, and failed to provide him with appointments with a psychologist or psychiatrist, (9) require him to shave with a dull razor and without shaving cream, (10) not provided him with new prescription eyeglasses, (12) placed him in a single cell with insufficient sunlight, ventilation, heat and limited or no access to a shower, radio, television, telephones, books, newspapers, and legal materials, do not adequately monitor the jail, do not require that as a transgender woman he be supervised by female staff members, do not adequately

spray insecticide for insects and spiders, do not have established and consistently-followed jail procedures and grievance policies, and (13) failed to provide him with access to his original case file for his criminal proceedings.

The joinder of multiple claims is governed by Rule 18 of the Federal Rules of Civil Procedure.  Rule 18(a) states that "[a] party asserting a claim, counterclaim, crossclaim, or third-party claim may join, as independent or alternative claims, as many claims as it has against an opposing party."  Where, as here, a plaintiff attempts to join claims against multiple defendants, Rule 20(a) provides the governing rule:

> (2)    Persons … may be joined in one action as defendants if:
>
> > (A)    any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and
> >
> > (B)    any question of law or fact common to all defendants will arise in the action.

Fed. R. Civ. P. 20(a)(2).  Rule 20(a)(2) establishes that a defendant cannot be joined in an action if the claims asserted against him or her do not arise from the same event or course of events or which do not share common factual grounds or legal bases with the claims asserted against the other defendants.  *Wilson v. Bruce*, 400 F. App'x 106, 108 (7th Cir. 2010).  Regarding the interaction between these two rules, the Seventh Circuit has explained that:

> A litigant cannot throw all of his grievances, against dozens of different parties, into one stewpot.  Joinder that requires the inclusion of extra parties is limited to claims arising from the same transaction or series of related transactions.  See Fed. R. Civ. P. 18, 20; *George v. Smith*, 507 F.3d 605 (7th Cir. 2007).  (To be precise: a plaintiff may put in one complaint every claim of any kind against a single defendant, per Rule 18(a), but a complaint may present claim # 1 against Defendant A, and claim # 2 against Defendant B, only if both claims arise "out of the same transaction, occurrence, or series of transactions or occurrences."  Rule 20(a)(1)(A).

*Wheeler v. Wexford Health Sources, Inc.*, 689 F. 3d 680, 683 (7th Cir. 2012).

The allegations in McBee's complaint set forth at least five different kinds of unrelated claims, and the Court will therefore separate these claims into five different civil actions. *George v. Smith*, 507 F. 3d 605, 607 (7th Cir. 2007) ("Unrelated claims against different defendants belong in different suits, not only to prevent the sort of morass that this 50-claim, 24-defendant suit produced but also to ensure that prisoners pay the required filing fees."); see also *Vermillion v. Levenhagen*, 604 F. App'x 508, 512-13 (7th Cir. 2015) (even where claims or defendants are properly joined, Rule 21 authorizes district court to add or drop a party or to sever a particular claim to avoid undue delay, expense, confusion, or prejudice).[2]

McBee's first claim is that the defendants have violated his right under the First Amendment to petition the government to seek redress for grievances through access to the court system. *Lewis v. Casey*, 518 U.S. 343, 355 (1996).[3]  These include his allegations in his first, second, third, and thirteenth "claims," wherein he contends that CCDC staff members confiscated his legal materials on three occasions [R. 14 at 7-11]; in February 2016 the law library consisted

---

[2]  Perhaps in an effort to justify bringing over a dozen unrelated claims in a single complaint, in nearly every claim he asserts McBee claims that all or nearly all of the defendants are engaged in a vast, unified conspiracy to violate his constitutional rights with respect to that claim.  However, in none of his claims does McBee support this naked assertion with facts to indicate that any such a conspiracy actually exists.  Instead, McBee merely recites in every claim that each defendant is "engaged in a conspiracy to allow, facilitate, further, promote, and condone this."  Such unsupported allegations are insufficient to state a viable claim for conspiracy, and the Court will therefore dismiss the conspiracy claims upon initial screening. Cf. *Cooney v. Rossiter*, 583 F.3d 967, 970 (7th Cir. 2009) ("a bare allegation of conspiracy [is] not enough to survive a motion to dismiss for failure to state a claim.").

[3]  McBee asserts that the conduct set forth in these claims violates his rights under the First, Fourth, Fifth, Sixth, and Fourteenth Amendments, as well as various provisions of Kentucky law.  [R. 1 at 28-29, 32]  Where a constitutional claim is covered by a specific constitutional provision, the claim must be analyzed under the standard appropriate to that specific provision, not under some other amendment or under the broad rubric of due process. *Graham v. Connor*, 490 U.S. 386, 395 (1989).  The Court will therefore limit its discussion to the particular constitutional provision directly applicable to the type of claim asserted by McBee.

of a single volume on Kentucky criminal procedure [R. 14 at 11-12]; after access to computer-assisted legal research through Westlaw was promised by August 23, 2016, its availability was delayed for three weeks, the subscription plan provided was restricted, and he was limited to one hour of use per week [R. 14 at 12-15]; and he is being denied access to his "original case file" in his criminal case [R. 14 at 27]. Because these appear to be the matters that primarily motivated McBee to file suit, the Court will retain this "access to courts" claim in the present complaint.

McBee separately alleges in his fourth claim that the defendants violated his First Amendment right to exercise his religious beliefs by failing to provide him with a Kosher diet. [R. 14 at 15-16] He alleges in his seventh claim that when he was being booked into custody on January 27, 2016, Sgt. Lohr used excessive force in violation of the Eighth Amendment when he required McBee to remain handcuffed with his hands behind his back. [R. 14 at 18-19] These claims arise from conduct by different defendants, lack a common factual or legal basis with McBee's first claim and with each other, and each will therefore be severed from this action and will proceed as two separate cases. Cf. *Hawkins v. Lemons*, 357 F. App'x 990, 991 (10th Cir. 2009) (district court properly refused to permit inmate's excessive force claims to proceed together with claims challenging sufficiency of medical care as the claims lacked a common factual or legal basis under Rule 20(a)(2)).

McBee's sixth, eighth, tenth, and eleventh claims assert that the defendants were deliberately indifferent to his serious medical needs in violation of the Eighth Amendment.[4] McBee alleges that the defendants did not provide him with adequate medical care for the injuries

---

[4] Because McBee is a pretrial detainee who is not presently incarcerated by reason of an extant conviction, his claims are governed by the Fourteenth Amendment rather than the Eighth Amendment. However, the standards for evaluating such claims are functionally identical. *Caiozzo v. Koreman*, 581 F. 3d 63, 69-72 (2d Cir. 2009).

he sustained while attempting to commit the robbery for which he is charged [R. 14 at 17-18]; did not provide him with the necessary hormone therapy, prescribed medications, and psychological care necessary after he informed jail staff that he is a transgender woman [R. 14 at 19-20]; have not provided him with a new pair of prescription eyeglasses [R. 14 at 21-22], and have not renewed or filled his prescription for Klonopin, an anti-anxiety medication [R. 14 at 22-23]. These constitutional claims based upon his medical care are factually and legally unrelated to his other claims, and hence will be severed into a third new civil action.

Finally, McBee presents a wide and diverse assortment of complaints regarding the conditions of his confinement in his fifth, ninth, and twelfth claims, ranging from the cost of postage stamps [R. 14 at 16], arrangements for shaving [R. 14 at 20-21], the environment of his cell and shower, and the manner of his supervision and monitoring [R. 14 at 23-26]. Liberally construing these claims as loosely asserting that the conditions of his confinement violate the Fourteenth Amendment, these claims will be severed into a fourth new civil action.

    4.    <u>Screening of the Access-to-Courts Claim</u>.

Having granted McBee *pauper* status, the Court must screen his remaining claim that the defendants have violated his First Amendment rights by limiting his access to certain legal materials.[5] When performing an initial screening, a district court must dismiss any claim that is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary

---

[5]  At various times, the Supreme Court has grounded the right of "access to the courts" in the Privileges and Immunities Clause of Article IV, the Petition Clause of the First Amendment, the Due Process Clauses of the Fifth and Fourteenth Amendments, and the Equal Protection Clause of the Fourteenth Amendment. See *Christopher v. Harbury*, 536 U.S. 403, 415 n.12 (2002). But it remains a single, unitary right, and for ease of reference the Court will refer it as a claim arising under the First Amendment. McBee's complaint asserts that the conduct described in these "claims" also violated his rights under the Fourth and Sixth Amendments, as well as Kentucky law. The Court will address these claims separately.

relief from a defendant who is immune from such relief. *Hill v. Lappin*, 630 F. 3d 468, 470-71 (6th Cir. 2010). When testing the sufficiency of McBee's complaint, the Court affords it a forgiving construction, accepting as true all non-conclusory factual allegations and liberally construing its legal claims in the plaintiff's favor. *Davis v. Prison Health Servs.*, 679 F.3d 433, 437-38 (6th Cir. 2012).

McBee's claim regarding his ability to access the courts has three components. The first component (found in McBee's first claim) alleges that CCDC staff confiscated his legal materials on three separate occasions. [R. 14 at 7-11] McBee alleges that on March 5, 2016, officers Getz and Sarver took his notes from his cell on the grounds that they constituted a fire hazard. [R. 14 at 7] He further states that on August 7, 2016, at a time when he was representing himself in his criminal proceedings, CCDC Deputy Picarello confiscated his legal materials from his cell a second time. At this point, McBee was placed in segregation for six days for being "disrespectful," and when his legal materials were returned to him, some draft documents he had prepared were missing. [R. 14 at 7-8] McBee filed two *ex parte* motions in his criminal case regarding the confiscation or loss of his legal materials, but he indicates that Judge Julie Reinhardt-Ward denied both motions and ordered them filed into the public record. [R. 14 at 8-9] The third occasion was on October 12, 2016, when Sgt. Lohr confiscated legal materials and one lengthy draft motion that he had intended to file in his criminal case. [R. 14 at 9-10] Notably, McBee identified only Sgt. Lohr as a defendant in this action; officers Getz and Sever and Deputy Picarello are not named defendants.

The second component alleges that CCDC's law library was insufficient in two respects. In the first (found in McBee's second claim), he alleges that when he went to CCDC's law library on February 10, 2016, there was only a single copy of a book about Kentucky criminal procedure,

and it was missing many pages. McBee asserts that this prevented him from representing himself effectively in his criminal case (although he had appointed counsel at the time), and from learning that his rights had been violated as a participant in a class action filed in *Cunningham v. Berkebile*, No. 1: 12-CV-1570-RPM-MEH (D. Colo. 2012). [R. 14 at 11-12]  In the second (found in McBee's third claim), he complains that he did not receive access to Westlaw until September 15, 2016, six weeks after he began representing himself; that CCDC Jailer Daley limited him to using Westlaw for one hour per week; that Judge Reinhardt-Ward directed Daley to only permit him to use the service in furtherance of his criminal defense and not to research possible civil claims; and that he was restricted to a limited number of databases within the service. [R. 14 at 12-15]

The third component (found in McBee's thirteenth claim) alleges that Judge Reinhardt-Ward, prosecuting attorney Snodgrass-Deimlin, and prior defense counsel Hager denied his request to receive his "original case file" and unidentified e-mails sent or received by Hager, something he contends has prevented him from asserting civil claims and writing news articles. [R. 14 at 27]

Having thoroughly reviewed McBee's allegations, it is manifest that they fail to state a claim for violation of his federal constitutional rights, and his claims regarding his right of access to the courts must be dismissed. The Sixth Amendment to the Constitution affords a defendant facing criminal charges the right to counsel, and that assistance must be effective. *Powell v. Alabama*, 287 U.S. 45, 71 (1932).  For its part, the First Amendment affords any incarcerated person, whether a detainee awaiting trial or one convicted of a criminal offense, the right to meaningful access to the courts. *Lewis v. Casey*, 518 U.S. 343, 355 (1996).  While these rights have similar goals, they derive from different provisions in the Constitution, apply to different

categories of persons, are subject to different standards, and may be satisfied in different ways. *Bourdon v. Loughren*, 386 F. 3d 88, 95 (2d Cir. 2004).

The distinction is particularly relevant here because McBee expressly waived his Sixth Amendment right to counsel, and invoked his right to represent himself pursuant to *Faretta v. California*, 422 U.S. 806 (1975).  Having waived his right to counsel, it is well-established that he cannot invoke the Sixth Amendment to challenge the sufficiency of the resources available to him to represent himself.  Cf. *Smith v. Hutchins*, 426 F. App'x 785, 788 (11th Cir. 2011) ("the right to proceed *pro se* in a criminal trial does not imply there are additional rights to access legal materials or law libraries."); *United States v. Wilson*, 690 F.2d 1267, 1271 (9th Cir. 1982) ("We decline to interpret the right to self-representation under the Sixth Amendment to include a right to conduct one's own research at government expense.").  See also *Bourdon*, 386 F. 3d at 90, 93-98 (holding that the Sixth Amendment, which guarantees the right to effective assistance "of counsel," does not by its terms guaranty the defendant effective assistance from other sources such as prison law libraries, and even a violation of that guaranty cannot form the basis of a right-of-access to courts claim under the First Amendment).

Nor does McBee have any First Amendment right to meaningful access to the courts with respect to his efforts to represent himself in his criminal case.  By its terms, the right of access to the courts extends only to an inmate's direct criminal appeal, habeas corpus applications, and civil rights claims related to the conditions of confinement.  *Lewis*, 518 U.S. at 354-55.  It does not apply to a *pro se* defendant's efforts to represent himself at his criminal trial.  *United States v. Smith*,  907 F. 2d 42, 44 (6th Cir. 1990) (rejecting contention that either the First or the Sixth Amendment require that a criminal defendant who waives his Sixth Amendment right to counsel is entitled to an adequate law library to satisfy his constitutional right of access to the courts);

-10-

*Smith v. Hutchins*, 426 F. App'x 785, 788 (11th Cir. 2011) ("... a criminal defendant who seeks to proceed *pro se* has no right to access a law library to aid him in his own defense at trial where he has already been provided the option of legal counsel.") (collecting cases); *Degrate v. Godwin*, 84 F.3d 768, 769 (5th Cir. 1996) (affirming dismissal of a § 1983 suit by a prisoner because he "had no constitutional right to access a law library in preparing the *pro se* defense of his criminal trial.").

While most of McBee's complaints are directed towards proceedings in his criminal case, he also briefly alleges that the events described in the complaint interfered with his efforts to amend his complaint in this civil action and to assert a civil claim in a federal case pending in Colorado. [R. 14 at 11]  To establish a First Amendment claim in this context, *Lewis* requires an inmate to show not merely that the law library was inadequate in some abstract sense, but that the jail's actions caused him to suffer actual injury because he was prevented or hindered from asserting a particular, non-frivolous legal claim.  *Hadix v. Johnson*, 182 F. 3d 400, 404-06 (6th Cir. 1999); *Barnett v. Luttrell*, 414 F. App'x 784, 787 (6th Cir. 2011).

In this case, McBee filed his amended complaint in this action after the events about which he complains, see [R. 14], and he does not allege that he was prevented from asserting any particular claim.  The Colorado federal case McBee refers to was filed as a class action in 2012 by *pro bono* counsel to challenge mental health care provided at a federal prison there.  McBee was never a plaintiff in or party to that action.  After the case had already been pending for four years, McBee attempted to interject himself into those proceedings by filing a "notice" in September 2016, complaining that the proposed settlement did not address transgender issues.  His notice was stricken from the record by the Court shortly thereafter.  *Cunningham v. Berkebile*, No. 1: 12-CV-1570-RPM-MEH (D. Colo. 2012) [D. E. Nos. 367, 381, 387].  Less than two weeks later, McBee then filed his own civil complaint against many of the same defendants asserting these claims.

*McBee v. Federal Bureau of Prisons*, No. 1: 16-CV-3215-GPG (D. Colo. 2016).  Because McBee was not prevented from asserting any particular legal claim in either case, he suffered no actual injury from the conduct about which he complains, and he has stated no viable First Amendment claim regarding his access to the courts to seek redress of grievances.

McBee also contends that the confiscation of his legal materials violated his rights under the Fourth Amendment.  As a preliminary matter, to the extent that McBee complains about the confiscation of his legal materials because the consequence was an interference with his ability to present a criminal defense or to assert civil claims, that is a purely First or Sixth Amendment claim that fails for the reasons stated above, and may not be recast as a Fourth Amendment claim. *Graham v. Connor*, 490 U.S. 386, 395 (1989).  As for the Fourth Amendment claim, "the Fourth Amendment does not apply to searches of prison cells or seizures of property within them." *Simmons v. Szelewski*, 642 F. App'x 95, 99 (3d Cir. 2016) (citing *Hudson v. Palmer*, 468 U.S. 517, 533 (1984)); *Shakur v. Coelho*, 421 F. App'x 132, 133 (3d Cir. 2011).

In addition to the foregoing, McBee's allegations would also fail to state viable constitutional claims for a number of other reasons.  While McBee attempts to attach liability for all of the conduct described to all of the defendants, the law is clear that a defendant is only liable for conduct in which he or she was directly and personally involved.  *Nwaebo v. Hawk-Sawyer*, 83 F. App'x 85, 86 (6th Cir. 2003) (citing *Rizzo v. Goode*, 423 U.S. 362, 373-77 (1976)).  The mere fact of supervisory capacity is not enough: *respondeat superior* is not an available theory of liability.  *Polk County v. Dodson*, 454 U.S. 312, 325-26 (1981).  Many of McBee's allegations complain of conduct committed by officers whom he did not name as defendants in this action, and supervisory jail staff are not vicariously liable for their conduct.  In addition, the judge and prosecutor are entitled to absolute judicial immunity and absolute quasi-judicial immunity for their

conduct, which fell squarely within their respective roles in the criminal prosecution.  *Pierson v. Ray*, 386 U.S. 547, 553-55 (1967); *Imbler v. Pachtman*, 424 U.S. 409, 425-31 (1976).  McBee's public defender is not a "state actor" subject to liability under Section 1983.  *Polk County*, 454 U.S. at 324-25.

In addition to his federal claims, McBee alleges that the defendants violated certain provisions of Kentucky law, including Kentucky's Civil Rights Act found in Ky. Rev. Stat. Ch. 344, as well as various Kentucky regulations, the Kentucky Rules of Evidence, and Kentucky ethics opinions.  However, a district court may "decline to exercise supplemental jurisdiction over a claim [if] the district court has dismissed all claims over which it has original jurisdiction ..."  28 U.S.C. § 1367(c)(3).  Where, as here, the Court has dismissed all of the plaintiff's federal claims prior to service of process, the Court concludes that the balance of judicial economy, convenience, fairness, and comity all point toward declining supplemental jurisdiction.  *Carnegie–Mellon University v. Cohill*, 484 U.S. 343 (1988); *Musson Theatrical, Inc. v. Federal Exp. Corp.*, 89 F.3d 1244, 1255 (6th Cir. 1996) (noting that "[i]f the court dismisses plaintiff's federal claims pursuant to Rule 12(b)(1), then supplemental jurisdiction can never exist", and that "[a]fter a 12(b)(6) dismissal, there is a strong presumption in favor of dismissing supplemental claims.").  The Court will therefore dismiss the plaintiff's state law claims without prejudice.

5.   Motion for Injunctive Relief.

Along with his other submissions, McBee filed a motion for injunctive relief to compel Jailer Daley to provide him with access to Westlaw for 15 hours per day and a subscription plan with access to a much wider variety of state and federal materials, including cases, dockets, statutes, regulations, and secondary materials such as law review articles and practice guides, relief he contends is grounded in his First and Sixth Amendment rights.  [R. 18]  Having concluded,

under controlling Sixth Circuit precedent, that McBee states no claim for violation of either amendment, his request for injunctive relief necessarily fails because he cannot establish any likelihood of success on the merits, and his motion must be denied.

Accordingly, **IT IS ORDERED** that:

1.    McBee's motion to appoint counsel to represent him in these proceedings [R. 16] is **DENIED**.

2.    McBee's "Motion for Leave to Amend Complaint Prior to Screening" [R. 19] is **DENIED AS MOOT**.

3.    McBee's Claim Number Four regarding the free exercise of his religious beliefs [R. 14 at 15-16] is **SEVERED** from this action.  The Clerk of the Court shall **OPEN** a new civil action filed by McBee regarding this claim.  The Clerk shall **FILE** McBee's First Amended Complaint [R. 14] as the initiating document in that action, along with a copy of his request for injunctive relief related to this claim [R. 17], and a copy of this Order.

4.    McBee's Claim Number Seven regarding the excessive use of force [R. 14 at 18-19] is **SEVERED** from this action.  The Clerk of the Court shall **OPEN** a new civil action filed by McBee regarding this claim.  The Clerk shall **FILE** McBee's First Amended Complaint [R. 14] as the initiating document in that action, along with a copy of this Order.

5.    McBee's Claim Numbers Six, Eight, Ten, and Eleven regarding his medical care at CCDC [R. 14 at 17-18, 19-20, 21-22, 22-23] are **SEVERED** from this action.  The Clerk of the Court shall **OPEN** a new civil action filed by McBee regarding this claim.  The Clerk shall **FILE** McBee's First Amended Complaint [R. 14] as the initiating document in that action, along with a copy of this Order.

-14-

6.      McBee's Claim Numbers Five, Nine, and Twelve regarding the conditions of his confinement at CCDC [R. 14 at 16, 20-21, 23-26] are **SEVERED** from this action.  The Clerk of the Court shall **OPEN** a new civil action filed by McBee regarding this claim.  The Clerk shall **FILE** McBee's First Amended Complaint [R. 14] as the initiating document in that action, along with a copy of this Order.

7.      McBee's Claim Numbers One, Two, Three, and Thirteen regarding his right of access to the courts [R. 14 at 7-15, 27] are **DISMISSED WITH PREJUDICE** with respect to his claims under the federal Constitution and are **DISMISSED WITHOUT PREJUDICE** with respect to any claims arising under Kentucky law.

8.      This dismissal counts as a "strike" for purposes of 28 U.S.C. § 1915(g).

9.      McBee's motion for injunctive relief related to his claim regarding access to the courts [R. 18] is **DENIED**.

10.     McBee's motion for injunctive relief related to his claim regarding free exercise of his religious beliefs [R. 17], having been transferred to a new civil action asserting that claim, will be **DENIED WITHOUT PREJUDICE** for administrative purposes in this action.

11.     The Court will enter an appropriate judgment.

12.     This matter is **STRICKEN** from the active docket.

This 8th day of March 8, 2017.



Signed By:

*William O. Bertelsman*   *WOB*

**United States District Judge**

-15-